IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOSHUA PAUL GRATES,  )
)
        Plaintiff,  )
)
v.  )
)  Civil Action No. 14-1643
CAROLYN W. COLVIN,  )
ACTING COMMISSIONER OF  )
SOCIAL SECURITY,  )
)
        Defendant.  )

OPINION

AND NOW, this 21st day of March, 2016, upon consideration of the parties' cross-motions for summary judgment pursuant to plaintiff's request for review of the decision of the Acting Commissioner of Social Security ("Acting Commissioner") determining that he no longer qualifies for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("Act"), IT IS ORDERED that plaintiff's motion for summary judgment (Document No. 8) be, and the same hereby is, granted, and the Acting Commissioner's motion for summary judgment (Document No. 10) be, and the same hereby is, denied. The Acting Commissioner's decision of April 25, 2012, will be vacated, and the case will be remanded to the Acting Commissioner pursuant to sentence 4 of 42 U.S.C. §405(g) for further proceedings consistent with this Opinion.

When the Acting Commissioner determines that a claimant is not "disabled" within the meaning of the Act, the findings leading to such a conclusion must be based upon substantial evidence. "Substantial evidence has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate.'" Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (citation omitted).

Despite the deference to administrative decisions required by this standard, reviewing courts "'retain a responsibility to scrutinize the entire record and to reverse or remand if the [Acting Commissioner's] decision is not supported by substantial evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Smith v. Califano, 637 F.2d 968, 970 (3d Cir. 1981)). In evaluating whether substantial evidence supports an ALJ's findings, "'leniency [should] be shown in establishing the claimant's disability, and . . . the [Acting Commissioner's] responsibility to rebut it [should] be strictly construed . . . .'" Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)). These well-established principles dictate that the court remand this case to the Acting Commissioner for further proceedings at step 3 of the sequential evaluation process.

Plaintiff received SSI benefits based on disability as a child. When plaintiff turned 18 years old, eligibility for benefits was redetermined under the ruled for determining disability in adults, and it was found that he was no longer disabled as of December 8, 2010. The decision was upheld after a disability hearing by a State agency disability hearing officer. Subsequently, at plaintiff's request, an ALJ held a hearing on March 13, 2012, at which plaintiff and his mother appeared and testified.[1] On April 25, 2012, the ALJ issued a decision finding that plaintiff's disability ended on December 8, 2010, and he has not been disabled again since that date. The Appeals Council denied plaintiff's request for review on November 6, 2014, making the ALJ's decision the final decision of the Acting Commissioner. The instant action followed.

---

[1] Although informed of his right to representation, plaintiff chose to appear and testify at the hearing without the assistance of an attorney or other representative.

Plaintiff, who has a high school education, was 22 years when the ALJ's decision became final and is classified as a younger individual under the regulations. 20 C.F.R. §416.963(c). Plaintiff does not have any past relevant work experience.

After reviewing plaintiff's medical records and hearing testimony from plaintiff and a vocational expert at the hearing, the ALJ concluded that plaintiff is not disabled within the meaning of the Act. Although the medical evidence established that plaintiff suffers from the severe impairments of asthma, mood disorder, mild mental retardation, a history of learning disability, attention deficit hyperactivity disorder, oppositional defiant disorder and conduct disorder, those impairments, alone or in combination, do not meet or equal the criteria of any of the listed impairments set forth in Appendix 1 of 20 C.F.R., Subpart P, Regulation No. 4 ("Appendix 1").

The ALJ found that plaintiff retains the residual functional capacity to perform work at all exertional levels with a number of additional non-exertional limitations. Plaintiff is limited to performing simple, routine and repetitive tasks, and he requires low stress work that involves occasional simple decision making and occasional changes in the work setting. In addition, plaintiff is limited to occasional interaction with supervisors, co-workers and the public. Finally, plaintiff must avoid concentrated exposure to fumes, odors, dusts, gases, poor ventilation and extreme cold, extreme heat and humidity (collectively, the "RFC Finding").

Based upon testimony by a vocational expert, the ALJ concluded that plaintiff's vocational factors and residual functional capacity permit him to perform work that exists in significant numbers in the national economy, such as bench assembly jobs, hand packers and hand-working jobs. Accordingly, the ALJ found that plaintiff's disability ended on December 8, 2010, and he has not become disabled within the meaning of the Act since that date.

The Act defines "disability" as the inability to engage in substantial gainful activity by

reason of a physical or mental impairment that can be expected to last for a continuous period of at least twelve months. 42 U.S.C. §1382c(a)(3)(A). The impairment or impairments must be so severe that the claimant "is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §1382c(a)(3)(B).

The Social Security Regulations specify a five-step sequential evaluation process for determining whether a claimant is disabled. The ALJ must assess: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria listed in Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work that exists in the national economy, in light of his age, education, work experience and residual functional capacity.[2] 20 C.F.R. §416.920(a)(4). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id.

In this case, plaintiff challenges the ALJ's findings at step 3 of the sequential evaluation process, arguing that the ALJ erred by finding that he does not meet listing 12.05C for mental retardation. At step 3 of the sequential evaluation process, the ALJ must determine whether the claimant's impairment meets or equals one of the listed impairments. Burnett v. Commissioner of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). The listings describe impairments that prevent an individual, regardless of age, education or work experience, from performing any gainful activity. 20 C.F.R. §416.925(a); Knepp v. Apfel, 204 F.3d 78, 85 (3d Cir. 2000).

After reviewing the record, we agree with plaintiff that the ALJ's step 3 analysis as to

---

[2]Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his impairments. 20 C.F.R. §416.945(a)(1). In assessing a claimant's residual functional capacity, the ALJ is required to consider the claimant's ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §416.945(a)(4).

whether he meets listing 12.05C for mental retardation is incomplete, and thus not supported by substantial evidence. That listing, which now is referred to as intellectual disability,[3] provides, in relevant part, as follows:

> 12.05. Intellectual disability: Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> * * *
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§12.05, 12.05(C).

The United States Court of Appeals for the Third Circuit has held that in order to meet the requirements of §12.05C, a claimant "must i) have a valid verbal, performance or full scale IQ of 60 through 70, ii) have a physical or other mental impairment imposing additional and significant work-related limitations of function, and iii) show that the mental retardation was initially manifested during the developmental period (before age 22)." Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003); see also Illig v. Commissioner of Soc. Sec., 570 Fed. Appx. 262, 265 (3d Cir. 2014). The Third Circuit has explained that, "[a]s is true in regard to any 12.05 listing, before demonstrating the specific requirements of Listing 12.05C, a claimant must show proof of a 'deficit in adaptive functioning' with an initial onset prior to age 22." Gist v. Barnhart, 67 Fed. Appx. 78, 81 (3d Cir. 2003).

---

[3] Although listing 12.05 was revised in 2013 and now refers to "intellectual disability" rather than "mental retardation," the substance of the listing has not changed. See Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46,499 (Aug. 1, 2013).

Here, the ALJ found that plaintiff did not meet listing 12.05C because plaintiff did not establish that he suffered from deficits in adaptive functioning prior to age 22. (R. 27). The ALJ based this finding on the following: (1) no medical source found that plaintiff meets or equals the requirements of listing 12.05; (2) plaintiff's history of learning support in school was unpersuasive because he was able to complete high school, obtain a driver's license and engage in other activities that do not indicate significant deficits in adaptive functioning; and (3) plaintiff's treatment records describe him as having average intellect, appropriate appearance, intact memory, a cooperative attitude, good reasoning and a logical thought process. (R. 27).

The ALJ also found that plaintiff did not meet the IQ requirement of listing 12.05C. Although plaintiff's IQ scores from testing performed in 2010 were 65-69, which satisfies the listing requirement, the ALJ determined the scores were suspect. (R. 28).

The ALJ's finding that plaintiff does not meet listing 12.05C is not supported by substantial evidence for several reasons. First, the ALJ's analysis of whether plaintiff satisfies the requirements of the listing is incomplete because the court cannot meaningfully determine the ALJ's basis for concluding that plaintiff did not suffer from deficits in adaptive functioning prior to age 22. See Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004) (requiring the ALJ to sufficiently explain his findings to permit meaningful review).

As explained in Logan v. Astrue, 2008 WL 4279820 (W.D. Pa. Sept. 16, 2008), the Regulations do not define "deficits in adaptive functioning," nor do they identify guidelines by which to assess the existence or severity of a claimant's alleged deficits. Id. at *8. Likewise, there is no Third Circuit case that addresses this issue. Id. However, the Social Security Administration ("SSA") issued a regulation entitled Technical Revisions to Medical Criteria for Determinations of Disability, 67 Fed. Reg. 20018-01 (April 24, 2002), which provides guidance on the matter. The

SSA recognized that each of the four leading professional mental health organizations defines intellectual disability, or adaptive functioning, in a slightly different manner. Logan, 2008 WL 4279820, at *8. The SSA clarified that it did not seek to endorse the methodology of one professional organization over another, and would allow use of any of the measurement methods endorsed by one of the professional organizations. Id. According to the SSA, to assess a claimant's alleged intellectual disability to determine if deficits in adaptive functioning exist, an ALJ should consult either the American Psychiatric Association's DSM-V, the standard set forth by the American Association on Intellectual and Developmental Disabilities or the criteria of the other major mental health organizations. Id.

In this case, it is not clear from the ALJ's decision which standard or criteria, if any, he used to assess whether plaintiff had deficits in adaptive functioning prior to age 22. According to the ALJ, no medical source found plaintiff met the requirements of listing 12.05C, plaintiff's history of learning support in school was unpersuasive and plaintiff's treatment records did not support a finding that he had deficits in adaptive functioning. (R. 27). However, absent from the ALJ's discussion is any explanation of the standard or criteria he employed in determining that plaintiff did not have deficits in adaptive functioning. Accordingly, remand is required so the ALJ can explain what standard or criteria he used in evaluating whether plaintiff suffered from deficits in adaptive functioning and complete his analysis. See Butler v. Colvin, 2015 WL 5725124, at *4 (W.D. Pa. Sept. 29, 2015) (finding remand necessary so that the ALJ could explain what standard or criteria he used in evaluating whether the plaintiff suffered from deficits in adaptive functioning); Dignall v. Colvin, 2015 WL 853679, at *5 (W.D. Pa. Feb. 26, 2015) (finding remand necessary where ALJ failed to sufficiently identify any standard or factors he considered in determining whether the plaintiff had deficits in adaptive functioning); Thomas v. Colvin, 2014 WL 584048,

at *10 (W.D. Pa. Feb. 14, 2014) (finding remand appropriate where ALJ failed to explain the standard he utilized in concluding that the plaintiff did not have deficits in adaptive functioning); Grunden v. Astrue, 2011 WL 4565502, at *5 (W.D. Pa. Sept. 29, 2011) (finding remand required where ALJ failed to indicate the standard he used to evaluate whether the plaintiff had deficits in adaptive functioning).

If the ALJ determines that plaintiff suffered from deficits in adaptive functioning prior to age 22, based on the record before the court, it appears that the other requirements of listing 12.05C are met. Although the ALJ found that plaintiff does not have a valid verbal, performance, or full scale IQ of 60 through 70, that finding is not supported by substantial evidence. In this case, plaintiff achieved the following results on the Wechsler Adult Intelligence Scale - III testing administered by consultative psychological examiner Dr. Clarence Anderson: Verbal IQ score of 69, Performance IQ score of 67 and Full Scale IQ score of 65. (R. 363, 365). Dr. Anderson concluded that "the result of this evaluation provides a valid measure of [plaintiff's] cognitive ability." (R. 364).

Despite the fact that all three of plaintiff's IQ scores satisfy that aspect of listing 12.05C,[4] the ALJ determined that the scores were "somewhat suspect." (R. 28). The ALJ pointed out that Dr. Anderson commented, "[i]t seems somewhat strange that [plaintiff] was able to obtain his driver's license with limited ability that was measured on the present evaluation." (R. 28, 363). Despite Dr. Anderson's comment to that effect, he nonetheless found plaintiff's IQ scores were a valid measure of plaintiff's cognitive ability. (R. 364, 365). The court finds that plaintiff's IQ

---

[4]To satisfy the requirement of listing 12.05C that the claimant must have a valid verbal, performance or full scale IQ of 60 through 70, the Regulations only require that one of those IQ scores be in the 60 through 70 range. See §12.00D.6.c. (". . . where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05"); see also Markle, 324 F.3d at 186 (recognizing that the lowest of these three IQ scores is to be utilized in making a determination under §12.05C).

scores which were deemed valid by Dr. Anderson, a psychologist, conclusively establish that he meets the IQ requirement of listing 12.05C, thus the ALJ's decision to the contrary is not supported by substantial evidence. See Markle, 324 F.3d at 187 (although an ALJ may reject scores that are inconsistent with the record, there was no basis for rejection where a psychologist determined IQ scores were valid and there was no expert opinion by another medical professional to contradict the psychologist's IQ findings); Morales, 225 F.3d at 318 ("An ALJ cannot reject IQ scores based on personal observations of the claimant and speculative inferences drawn from the record.").

Finally, the ALJ found that plaintiff does not have a physical or other mental impairment imposing an additional and significant work-related limitation of function as required by listing 12.05C, (R. 28), but provided no elaboration on this point. The ALJ's finding is not supported by substantial evidence. The Third Circuit has held that the finding of a severe impairment establishes that the claimant has a physical or other mental impairment imposing an additional and significant work-related limitation of function under listing 12.05C. See Markle, 324 F.3d at 188. Therefore, the ALJ's finding in this case that plaintiff has numerous severe physical and mental impairments, which caused functional limitations that were accounted for in the RFC Finding, (R. 23, 29), satisfies the requirement of a physical or other mental impairment imposing an additional and significant work-related limitation of function.

As stated above, this case must be remanded because the ALJ's step 3 finding as to whether plaintiff meets or equals listing 12.05C is incomplete. On remand, the ALJ must evaluate whether plaintiff suffered from deficits in adaptive functioning prior to age 22, specifically explaining what standard or criteria he relies on in conducting that evaluation.

For the foregoing reasons, plaintiff's motion for summary judgment will be granted, the Acting Commissioner's motion for summary judgment will be denied, and this case will be remanded to the Acting Commissioner for further proceedings consistent with this Opinion.

Gustave Diamond
United States District Judge

cc: Stanley E. Hilton, Esq.
801 Jonnet Building
Monroeville, PA 15146

Christy Wiegand
Assistant U.S. Attorney
700 Grant Street
Suite 4000
Pittsburgh, PA 15219